## Coots v. Commonwealth.

May 6, 1941.

Isaac Turner for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Homer Coots, age 17, killed Harmon Sizemore late in the afternoon of May 16, 1940. He, together with his mother, Lizzie Coots, and a sister, Viola, was indicted for the crime. Homer was tried first and found guilty. His punishment was fixed at 21 years in the penitentiary; hence this appeal.

Reversal is urged upon the following grounds: (1) The verdict is flagrantly against the evidence; (2) the court erred in sustaining objections to evidence offered by the defendant; (3) the court erred in refusing to permit the defendant to read the evidence of Mary Lewis for the purpose of contradicting a commonwealth witness; (4) the court erred in instructing the jury; and (5) prejudicial argument was made by the commonwealth's attorney.

Harmon Sizemore ran a store on Cutshin Creek in

Leslie County. A stave mill was being operated near by. Boyd Coots, husband of Lizzie and the father of the appellant and Viola, worked at the mill. The Coots family lived around a point some 600 yards from the store on property which was rented from Sizemore. Late in the afternoon of May 16th, Lizzie and Viola went to the mill. Several persons were around the store, including Bessie Day, to whom Boyd Coots had been showing some attention. Lizzie was jealous of the Day girl. Over the objection of Boyd, Lizzie and Viola went to the store and started a fight with Bessie. One of the Coots women threw a rock which struck the side of the store. Sizemore came out and ordered Lizzie and her daughter from the premises. He kicked them several times. They were screaming and cursing Sizemore as they went in the direction of their home with Boyd. There is evidence that Lizzie threatened to kill Sizemore.

According to the Commonwealth's evidence the Coots crowd went home, where they were joined by Homer, who had a pistol. One witness testified that he heard Lizzie say, "Homer, go and get my gun and we will kill that black nigger son of a bitch." They started back toward the store, the women still cursing Sizemore. When Sizemore heard the Coots family returning he and his son-in-law, Cecil Lewis, went toward them. The parties met near the point, some 300 yards from the store, and on the property occupied by the Coots family. Cecil Lewis testified that Sizemore had a stick in his hand as he approached the Cootses, but threw it away just as he reached them; that Sizemore told the Cootses to go home and that he did not want them cursing in front of his family; that Homer was in the party, but that he did not see him fire the shot; and that after the shot was fired Homer drew the gun on him.

The appellant's version of the affray is that, as Boyd, Lizzie and Viola were going home, Sizemore, who was followed by Cecil Lewis, overtook them and began beating Lizzie with a stave. Homer testified that when he heard his mother screaming he got his gun and started toward the store; that he saw Sizemore strike his mother; that, as he approached, Sizemore drew back the stave to hit him and he then fired at him; and that Sizemore took a few steps and fell over the cliff into the creek.

It is obvious from what has been said that there

was ample evidence to warrant the submission of the case to the jury and to sustain the verdict. While there is sharp conflict in the two versions of the killing, the credibility of the witnesses was for the jury. Combs v. Commonwealth, 284 Ky. 546, 145 S. W. (2d) 36, and cases cited therein.

Under the second point complaint is made of the testimony of Cecil Lewis. Counsel for the appellant states that this witness was not sworn, but the record shows otherwise. Objection was raised also as to the testimony of Sizemore's wife, but no reason is given for this objection. We find no basis for it. Further complaint is made of the court's refusal to permit John R. Baker, who had testified that he had married a Melton and that his mother was a Pennington, to answer the question, "It is all in the family, isn't it?" This was not prejudicial.

The record shows that near the end of the trial Cecil Lewis was brought back for re-cross-examination. He was asked whether or not he had said in the presence of Mary Lewis and a Mr. Woods that it was bad that Harmon Sizemore got killed, but that he had killed himself, and that he (Cecil) had said he did all he could to keep him from going down there. His answer was "No."

The next item in the record follows:

"Out of presence of the jury.

"Mary Lewis, being summoned as a witness in this case on behalf of the defendant, relates to the matter of a conversation between herself and Cecil Lewis as to what Cecil Lewis said to her about the killing of Harmon Sizemore.

"The defendant avows that if she were present in court and testified in the said case she would say that she had a conversation with Cecil Lewis the day that Harmon Sizemore was buried and that she said to him, 'It is bad that Harmon got killed.' And he said to her, 'It is awfully bad but he killed himself. I tried my best to keep him from going down there but I could not do a thing with him.'

"The said Mary Lewis, being summoned and a warrant of arrest being issued for same, was unable to appear in court because of her sickness.

"Comes now the attorney for the defendant and moves the court to continue the case because of what is set out above. The Court being advised overruled said motion to which ruling of the court the defendant excepts."

There is no showing as to when Mary Lewis was summoned, how far she lived from the place of the trial, how long she had been sick, or why her deposition could not have been taken; nor was there a motion at the beginning of the trial for a continuance on account of her absence. A Mr. Woods was said to have been present when Cecil made the alleged statement. He was not called as a witness. Under the circumstances we think the court properly refused to grant a continuance.

The instructions are criticized because of a conspiracy instruction and because a "home premise" instruction was not given. We have noted that the appellant testified that he killed Sizemore in self-defense and that the Commonwealth's testimony was to the effect that Sizemore was unarmed and was attempting to get the Coots family to go back home at the time he was shot. We have noted further the testimony as to Lizzie's asking Homer to get her gun. There is testimony also that at the time Sizemore was killed, some of the Coots crowd said, "Shoot him, shoot him, God damn him." We fail to see how the instructions were prejudicial to the appellant's substantial rights.

The last ground urged for reversal relates to a statement said to have been made by the Commonwealth's attorney to the effect that Lizzie Coots had Homer trained to do the killing. We fail to see how the statement was prejudicial to appellant's substantial rights, under all the facts and circumstances heretofore reviewed, but, in any event, this complaint is not incorporated in the bill of exceptions. The alleged error should have been incorporated therein. Tiernay v. Commonwealth, 241 Ky. 201, 43 S. W. (2d) 661; Dilley v. Commonwealth, 243 Ky. 464, 48 S. W. (2d) 1070; Begley v. Commonwealth, 263 Ky. 824, 94 S. W. (2d) 4.

It follows from what has been said that it is our view that the judgment should be and it is affirmed.