*2 OPINION of the Court, by
Ch. J. Boyle.
This was an ejectment, brought by Gist’s heirs against Ro-kinet and others, to recover possession of 2000 acres of land lying in Bourbon county. On a case agreed, court below being of opinion that the lessors of the T>laint’ff were entitled to an undivided moiety of the land in contest, gave judgment for them accordingly j from which each party has appealed to this court.
The following statement comprises the material facts upon which the cause depends.
the proclamation of *763> j>el?re »*<⅛-visableinterest,
Under the royal proclamation of 1763, Thomas Gist, for military services performed during the then late war between Great Britain and France, became entitled to a grant of 2000 acres of land, upon his personal applica->n to any of the governors of the then colonies of North America. In 1772, before he had applied for his claim, he made and published his .will, by which, after providing for the payment of his debts, he devised to his sister Ann Gist, one half part of his whole estate, real and personal ; and the other half part to, his natural daughter Elizabeth Johnson; but if his sister Ann Gist should die without heirs of her body, lawfully begotten, then he devised her half part to his daughter Elizabeth Johnson, &c. Having afterwards applied for and obtained a warrant, he caused, by virtue thereof, a survey to be made upon the land in controversy, and procured a grant therefor from the commonwealth of Virginia, bearing date the 5th of January, 1780, In 1785, without altering or republishing his will, he died seized of the said tract of land, together with considerable other real and personal estate, leaving Nathaniel Gist his eldest brother and heir at law. On the 29th of September, 1791, Ann Gist, being- a feme sole and without issue of her body, by her deed, duly executed and recorded, conveyed to Nathaniel Gist in fee simple an undivided moiety of the above mentioned tract of land. Since which time Nathaniel Gist has departed this life,leaving the lessors of the plaintiff his children and heirs at law. They contend that Thomas Gist was not at the date of his will possessed oí such an interest as was transmissablc by devise,and that the entire estate in the whole 2000 a - eres has been cast upon them by descent: but in case this point should be decided against them, they then claim title-to an undivided moiety under the conveyance from Ann Gist to their ancestor. The defendants derive title under Elizabeth Johnson, and although they contend the interest of Thomas Gist at the date of his will was such an one as was devisable, yet they insist that the estate of Ann Gist was not such as to enable her without having issue of her body to convey in fee simple. But if the title of the lessors of the plaintiff should be deemed good, under the conveyance from Ann Gist, for an undivided moiety, the defendants *4 nevertheless controvert their right of recovery in this actlorl 5 in as much as they have claimed in their declaration an entire estate in the whole tract in contro-versv, instead of an undivided moiety.
The last point has been so repeatedly adjudged (a) untenable by this court, that it was abandoned in the ari3rUn3ent, and treed not now be particularly considered. With respect to the estate which Ann Gist took under the will,' it is clear as the law stood at the date of the will, if the interest of the. testator were a devisable one, that she was vested with an estate in tail, which by the act of the Virginia legislature of 1776, was changed into an estate in tee simple, and consequently her right to alien it in fee.simple, whether she had issue of her body or not, was incontestable.
The only point therefore of any difficulty is, whether Thomas Gist, at the time of making and publishing his will, had such an interest under the proclamation of 1763, as was transmissable by devise ?
In the construction of the English statute of wills, which was in force at the date of the will in question, it is a settled rule, that land acquired after making a devise will not pass thereby, It is however well e§ta— blished that it is not necessary that the testator should have a complete legal title to land, to enable him to dispose of it by will. It is sufficient that he has an equitable title. Accordingly where a person enters into articles for the purchase ofland, and before he receives a conveyance, makes a devise thereof, it has uniformly been held that the land will pass by such devise.
That the right acquired under .he proclamation, was at least equal to the right which is acquired by a contract or agreement with a private individual, does not seem to admit of much doubt, or to require much argument to demonstrate. The services in consideration of which the grant was engaged to be made, were of a meritorious nature, and had already been performed, and the engagement on the part of the government was made by the proper functionary and in the most solemri and legitimate mode.
Every principle therefore of morality, as well as of sound policy, required the performance of the engagement to which the faith of the government was thus pledged. The government may not indeed have beens *5 and probably was not bound by any stipulation anterior to the proclamation to make the remuneration for the services of its officers and soldiers, which was promised by that instrument, but the obligation which it imposed upon itself by that act, could not on that account be less sacred and inviolable. To suppose an obligation to,have existed on the part of the government, Without a correlative right in the officers and soldiers, would by preposterous in the extreme ; an'd if a right existed, whether it was a legal or an equitable one, it was equally transtnissabie by devise. It is true that the completion of the right was made by the terms oí the proclamation to depend upon the personal application oí the officer or soldier, and in this respect it may be considered a contingent one which might possibly never be perfected. This circumstancei however, does not seem to affect the devisable nature of the right. A distinction was taken in some of the old cases under the statute of wills between a vested and a contingent right, the former being held to be devisable, and the latter not so. But this distinction has long since been overruled, and the doctrine is now too well established to admit of a question, that a contingent executory estate or possibility clothed with an interest is devisable — 2 Saunders 388, n 8—1 Fenb. 218, 219, 220—Fearne Con. Rem. 539, 540—1 Pow. Devises 34—2 Burr. 1131—1 Black. Rep. 251, 605.
From these authorities, and others which might be cited to the same effect, the inference is clear that any right or interest which will descend to the heir, may also be passed by devise. In the case in 1 Black. Rep. 605, Lord Mansfield makes use of the strong and pointed language, that descendable and devisable are convertible terms. If therefore Thomas Gist at the date of his will, had such a right or interest under the proclamation as would have descended to his heir, had he died intestate, it follows that he might transmit it to. his devisees ; and that he had such a right, is proven by the universal practice of granting warrants to the heirs of officers and soldiers, under sinnilar circumstances, both under the regal government and that of the commonwealth of.Virginiá since the revolution.
Judgment affirmed.

 Davis vs. Whitefides, vol. 1, 513-Todd vs. M'Gee, vol. 2 350.