**Roy Dale RICHARDSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2000–CA–000542–MR.**

Court of Appeals of Kentucky.

Sept. 14, 2001.

Roy Dale Richardson, Central City, Pro Se.

Albert B. Chandler III, Attorney General of Kentucky, Michael L. Harned, Assis-

tant Attorney General, Frankfort, for Appellee.

Before BARBER, BUCKINGHAM, and MILLER, Judges.

## OPINION

BUCKINGHAM, Judge:

Roy Dale Richardson appeals from an order of the Madison Circuit Court denying his Motion to Vacate Sentence. We affirm.

On April 10, 1987, the Madison Circuit Court sentenced Richardson to six years in prison for the offense of receiving stolen property valued at over $100 and for being a second-degree persistent felony offender. Richardson was apparently allowed to remain free on an appeal bond while his case was before this court on appeal. On June 3, 1988, a panel of this court rendered an opinion affirming Richardson's conviction and sentence. That opinion became final on September 30, 1988.

Due to an oversight by the authorities, Richardson was allowed to remain free even though his bail had terminated as a matter of law pursuant to RCr[1] 4.54(2)(d). Richardson was finally taken into custody on October 18, 1991. In early 1995, while on parole, he was arrested for new offenses and was sentenced to seven and one-half years in prison. This sentence was ordered to run consecutively with the prior six-year sentence. Richardson was paroled again in 1998, but his parole was revoked in June 1999. On January 13, 2000, he filed a motion with the trial court to vacate his sentence.

By order entered on February 10, 2000, the trial court denied Richardson's motion. It treated the motion as one to vacate the judgment and sentence pursuant to RCr 11.42. The court concluded that the motion was not timely filed as required by RCr 11.42(10). The court also concluded that "there is no breach of any fundamental constitutional right...." This appeal followed.

Richardson argues on appeal that the trial court misconstrued his motion as an attack on the judgment of conviction through RCr 11.42. He maintains he was simply seeking credit for the three years and ten days he was "at liberty" following the finality of the opinion of this court affirming his conviction.

We have reviewed Richardson's Motion to Vacate Sentence and note that, although no mention is made of RCr 11.42, it seeks to have his six-year sentence vacated and makes no mention of seeking credit for the time at liberty toward the service of his sentence. Only after the trial court denied the motion as being an untimely RCr 11.42 motion did Richardson argue that he was merely seeking credit for the time in question. He did so in a motion for reconsideration which the trial court also denied.

Assuming Richardson's motion was one to vacate his sentence pursuant to RCr 11.42, it was clearly untimely. *See* RCr 11.42(10). If his motion is to be construed as only one requesting credit toward the service of his sentence and is considered timely, then it is nonetheless without merit.

■ The only case from this jurisdiction cited by Richardson in support of his argument that his due process rights have been violated is *Green v. Commonwealth,* Ky., 400 S.W.2d 206 (1966). In that case, Green entered a guilty plea to a felony offense, and the jury fixed his punishment at confinement in the penitentiary for one year. On October 19, 1959, the same day the jury verdict was rendered, Green filed a motion for a new trial. On February 5,

---

1. Kentucky Rules of Criminal Procedure.

1964, over four years after the motion was filed, the trial court entered an order denying the motion. On September 21, 1965, the trial court entered the judgment of conviction.

Citing RCr 11.02(1), which requires sentences to be imposed "without reasonable delay," the appellate court in *Green* reversed the trial court with directions to enter a new judgment discharging Green from custody. *Id.* at 209. Concluding that "unreasonable delay" had occurred, the court stated that "[w]e think it would be unrealistic to expect or require a convicted person to affirmatively urge the court to send him to prison." *Id.* at 208. The court also stated that "[t]here must be some time in which a convicted person may know he has satisfied his debt to society." *Id.* at 209.

We find the *Green* case to be distinguishable for two reasons. First, RCr 11.02(1) was clearly applicable but not followed by the trial court in *Green*. Second, the appellate court in that case found the delay to be "purposeful" and not accidental. *Id.* at 209.

■ Richardson argues two theories to support his contention that he is entitled to credit for the three years and ten days that he was at liberty following the finality of this court's opinion affirming his conviction and sentence. First, he argues that he is entitled to credit against his sentence for the time he was erroneously at liberty due to the negligence on behalf of the government and due to no fault of his own. "Traditionally, the doctrine of credit for time at liberty has only been applied where a convicted person has served some

part of his sentence and then been erroneously released." *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir.1988). Quoting *United States v. Vann*, 207 F.Supp. 108, 113 (E.D.N.Y.1962), the court in *Martinez* held that "[a]t common law, 'where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the imprisonment being endured, the sentence remains valid and subsisting in its entirety.'" *Martinez*, 837 F.2d at 864. The *Martinez* court recognized, however, that recent cases addressing the issue "examine the totality of the circumstances surrounding the delay in execution of sentence." *Id.*[2]

Richardson's second theory is that the government waived the execution of the sentence due to the court's failure to notify him that his conviction had been affirmed and that he was to start serving the sentence. Federal courts examining alleged due process violations in cases involving delays in the execution of sentences traditionally do so under the theories of waiver or estoppel. *Martinez*, 837 F.2d at 864. In *Green v. Christiansen*, 732 F.2d 1397 (9th Cir.1984), the court held that the government waived the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Id.* at 1399.

We could find no Kentucky cases directly on point concerning this issue. However, we find the views of the Pennsylvania

---

**2.** The facts in the *Martinez* case were that the appellant had been sentenced to four years in prison, but no commitment order has been entered and he had not been ordered to surrender to begin serving his sentence. Over seven years later, the government discovered

its error and Martinez was incarcerated. The Ninth Circuit of the United States Court of Appeals rejected Martinez's arguments that his sentence should be vacated due to waiver or estoppel on the part of the government. *Id.* at 865.

Superior Court in the case of *Commonwealth v. Blair*, 699 A.2d 738 (Pa.Super.1996), to be persuasive. Blair was sentenced by the trial court on February 24, 1993. He was released on an appeal bond on March 2, 1993, and the Pennsylvania Superior Court affirmed his conviction and sentence on April 18, 1994. The trial court, under the impression Blair had already begun to serve his sentence, was unaware he had remained free on bond. Apparently, his bond papers were missing from the record. On October 11, 1996, Blair was ordered to begin serving his sentence after the Pennsylvania Department of Corrections had contacted the trial court to inquire into the status of Blair's appeal.

The Pennsylvania appellate court acknowledged that Blair's failure to be incarcerated was not due to any error on his part. *Id.* at 743. Nevertheless, the court held that "[w]e will not allow the court system's inadvertent error to cancel any part of Blair's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government." *Id.* As did Blair, Richardson also raises arguments of due process violation and waiver. In *Blair*, the court said "we are not confronted here with conduct so 'affirmatively improper or grossly negligent' by the government that due process is violated and the execution of sentence is, therefore, waived." *Id.* at 745.

In considering the totality of the circumstances, like the appellate court in the *Martinez* case, we do not conclude that the government's actions were so wrong or so grossly negligent that fundamental fairness was violated. Thus, we conclude that the government did not impliedly waive execution of Richardson's sentence and that there is no due process violation. As did the court in the *Blair* case, we hold that neither relief in the form of "at liberty" credit nor in the form of a vacated judgment is appropriate. *See Blair*, 699 A.2d at 744–45.

The order of the Madison Circuit Court is affirmed.

ALL CONCUR.